Number 181725 Jeffrey D. Summers et al. versus the city of Pittsburgh et al. Please record. Marcus Scott for the appellate, Mr. Jeffrey Summers. My client was, oh sorry, I reserve two and a half minutes for my rebuttal time. Thank you. My client was issued a reasonable accommodation for sober homes because he runs an organization for supporting residents qualifying based on the ADA for living in those sober homes. He essentially was issued a reasonable accommodation and the city didn't enforce that accommodation. Meaning he asked for the accommodation and the city didn't enforce it. Summary judgment, we ask that summary judgment be denied based on the fact that there were several general issues of material fact and I'd like to start talking about. Well, let's start from the point of material fact. The defendants in this case filed a statement under Local Rule 56.1. You made a very brief filing in response to that which did not, in the manner specified by the rule, contradict or set forth an alternative version of any of the facts. So we have to take the facts, do we not, as they are set forth in the 56.1 statement filed by the defendants? Your Honor, from my recollection, that brief discussed our position and in taking the facts, the case law points out that the facts were taken from the evidence that we actually did offer in the accusation. Rule 56.1 is there for a purpose. The purpose is so that the district court on summary judgment doesn't have to go through the entire record. All right? Parties are, the moving party states the facts with record references as it sees it and the opposing party then has an opportunity to contradict and supplement those facts. I've looked at those filings. Your filing, which is extremely brief, does not contradict any of the defendant's facts and supplements it only very briefly. But those are the facts, the facts contained in the defendant's statement in your supplementation at control for purposes of the summary judgment motion and thus for purposes of appeal. Your Honor, if I recall, my brief did... I'm not talking about your brief. What I'm saying is that what I recall, my summary judgment from what we saw, it did address those issues from what I remember. You're saying what they filed incorporated the facts that you're now arguing. Yes, Your Honor. We discussed specific things, but in our supplements, we depended more because of the fact that our main argument was the lack of good faith by the city. What we said was, and if I do recall, we first identified that our clients were, I mean our clients, that my clients, clients themselves, the people living in the sober homes, were actually being discriminated against according to the ADA and the FHA. We actually did also isolate and talk about the fact that there was discrimination and that discrimination was coming from the city and how the city did discriminate against those people. You did that in your 56.1 statement? I believe I did. I mean, that was quite a long time ago. I'll look at it again. All right. And you refer to your clients. The plaintiffs here are not the residents of the sober houses. I refer to, and I'll be clear, that it was not my client, but it was the clients of my client. My client owns these sober homes in Fitchburg, and his clients, the ones that live there, the ones that actually pay for the service to be in that organization or in those services. In looking at this, what we have always said is that in summary judgment, based on the case law, that first and foremost, the court erred in not looking at, and not shedding the light that is most favorable to the non-moving party, as it says in case law when talking about summary judgment. In our situation, what we were, what was reflected was an idea about reasonable accommodations. So one of the things that we pointed out in our brief was the fact that there was a general issue of material fact on several occasions. First and foremost, we gave evidence to show that there was a general issue of material fact as how the city did what they were supposed to do or, in this case, did not do what they were supposed to do. One of the things that we looked at is the – I'm not sure that I understand that. Well – Excuse me. Yes, sir. The only preserved cause of action here on appeal is the cause of action for failure to grant a reasonable accommodation. Well – Excuse me. I'm sorry. The accommodation that you say was unreasonably withheld was the failure of the – or the refusal of the city to give you an exemption from the state's sprinkler law. Your Honor, I believe, if I may – Yeah. Our position was that the city actually did grant a reasonable accommodation but did not enforce it. We're also saying that the city – Wait, wait, wait. That the city granted a reasonable accommodation in respect to your sprinkler law request? In respect to the request that was made by my client, yes. My client made a request. The request, according to case law, was specific as to what we were – what he was trying to accomplish. The city actually did issue a – the city did issue a reasonable accommodation. No, but you're conflating two – no, wait a minute. You're doing the same thing that you did in your brief.  All right? There was initially a request for a reasonable accommodation in terms of relief from zoning code restrictions. That request was granted and your client was afforded the exemption or the exception that he requested as that relief. That's never been retracted. There was then a second request that there be some sort of exemption or relief from the state law which required that residential buildings of this sort with six or more residents be sprinklered. Right? That – there was considerable back and forth about that proposed accommodation. Your client at one point said that he would be willing to agree to limit the number of people in the sober houses to five. The city asked him to put it in writing and he refused. And then we had litigation. But there was – there was never any grant of the sprinkler law accommodation that you've sued on. You can answer that. I can answer that. Yes. From our position, Your Honor, based on the conversations that my client had with the city, with the solicitor at the time, the intent and what was granted was some sort of accommodation for just that. The issues that we had in the depositions that we gave was that they actually did want to do something, but they felt that the sprinkler law was being applied properly. And we said the sprinkler law was not being applied properly. But to be clear, when my client actually asked for the reasonable accommodation, that reasonable accommodation was granted on that area or on those situations. More importantly, the reason why we say it is in poor or bad faith is because when the – the city didn't do anything to fully accommodate all of the issues that were going on that my client did request. Reasonable accommodation under safe – excuse me. Reasonable accommodation under case law states specifically to the fact that the city has to know about what is going on, which they did. The city has to understand that the disability was there, which they did. And items three and four also go to the fact that they had to understand that that reasonable accommodation was important and they had to resolve it as we look in the PSL case and the other cases cited in my brief. We had to look at the fact that the reasonable accommodation was important for that and also that it did help – for that situation. In this situation what happens is that they were supposed to look at it on a case-by-case basis. They were supposed to analyze the situation. They were supposed to give what they could and inform us of what we couldn't. They did not do that. They just granted something. And then in that with litigation and what we were able to show and what we can show in testimony is that after that they refused to work with us for any reason whatsoever. You have two and a half minutes for rebuttal so you can follow that. Thank you. May it please the Court, Craig Pegney for the defendants and affiliates. I'd like to begin just by circling back to the first issue that was noted by the Court regarding the factual record at the summary judgment level. Your Honor is exactly correct that the plaintiff did not specifically oppose the facts that were submitted to the judge in that record in any way that now supports the arguments that are being made on appeal. To the extent that the plaintiff is raising some kind of a new argument that he did not make at the summary judgment level, he's not able to do that. The case law is clear on that. To the extent he is trying to allude to some sort of evidence that is not in the record, it's simply not there. Not to gild the lily on this point, but I think it's entirely obvious that the record in front of this panel does not support the arguments that are being made by the plaintiff appellant to Your Honors at this time. It appears to me there's a little bit of confusion perhaps about the nature of the accommodation request. The plaintiff has already conceded that the city granted a reasonable accommodation. I would submit that the analysis begins and ends there. You can't have a violation of the law claimed upon a denial of a reasonable accommodation if the plaintiff concedes, as he has, that the accommodation in question was granted. Well, that's not quite true, counsel, because the plaintiff's briefing, which is not necessarily a model of clarity, but as I understand it, really posits two separate accommodations, one of which was clearly granted, but the other of which, the one involving the sprinklers, was never granted, although there was considerable negotiation about it. And the record seems pretty clear that the reason that those negotiations broke down was that when Mr. Summers was asked to put in writing the proposal that he had made orally, he did not follow through and do that. But there were two separate requests, and the granting of the first doesn't necessarily hold the city harmless for the second. Your Honor, it is exactly correct that there was an initial granting of a reasonable accommodation request as to the zoning by-law request, and I would submit that that goes to the plaintiff's argument turning against the good faith that the city was entering into with the plaintiff in these discussions. In terms of the second request, just in terms of the background, the city was seeking to have the sober home in question put in sprinklers in accordance with the fire sprinkler law, and there is a different legal dispute as to its applicability under the MZA vis-à-vis the anti-discrimination statute or provision there. However, because of the discussions that went back and forth between the city and the plaintiff at that time, there was a hearing in front of the housing court, and plaintiff Mr. Summers said, well, rather than have the court issue a decision, I will agree to lower the occupancy to five or fewer, which brings him under the threshold six or more in the state sprinkler statute. Afterwards, the then city solicitor followed up in order to have that in writing and, of course, asked for inspections in order to make sure that this was the case, and it was at that time that plaintiff, for lack of a better phrase, hung up the phone. That's when the conversation ended because plaintiff was not willing to do that. In her decision, Judge Casper said, well, if we're talking about where we left off on that accommodations request and conversation, there are essentially four elements, and she went through each of those elements. One of them, and this is the threshold issue, was obviously granted, so I think we can dispose of that pretty easily. There are two, meaning the price of the sprinklers as well as the unwillingness to install them. That plaintiff says, I don't want to do because it would be some kind of, and I think he uses the phrase, undue hardship, although that's not necessarily the right phrase in the analysis. But the case law is absolutely clear that, generally speaking, but specifically, as the Seventh Circuit case has pointed out, that in the sober home context, you can't, as an owner of a sober home, say that I'm not going to have the money to put in these virus sprinklers because it's going to cost me money. Case law is clear on that. The only remaining element that plaintiff was looking for was the sporadic inspections. Here's where we get back to where we started, which is there's no evidence in the record that sporadic inspections would in any way cause the disabled occupants of the sober homes to have somehow a heightened anxiety or some kind of issue because once every couple of weeks or months or whatever it's going to be, someone simply confirms that there's five or fewer people within the sober home. At most, there is a passing reference in the record that says from Mr. Summers that it could cause anxiety to my disabled occupants of the sober homes, that in no way, and that's purely conjecture. There's nothing in the record that shows that as a matter of some kind of a disability that an individual is actually going to have heightened anxiety because of a sporadic inspection. So I submit to you, the panel here today, that the district court did a very thorough job, as the law compels, of looking at each of these elements when I don't even know that that was actually the conversation in terms of the reasonable accommodation, but demonstrating why under the law it's neither reasonable or necessary. I would note finally that, alluding to the amicus brief that was submitted by the AG's office, that although this case presents a fairly narrow question, I would submit, in terms of just what has been before your honors in terms of the factual record and the legal principles applied to it, also poses a larger safety question. What plaintiff is essentially urging this court to adopt as the end result is that the plaintiff as a sober home would not have to install a fire sprinkler system, which is going to take a safety measure that will save lives away from a population that, of anything, is more at risk than others and would require that very safety measure that was put in in the first place. Yeah, not only take it away from that population, but also from the entire neighborhood. And I would submit, if you cast this outwards, we are talking about this demographic across the commonwealth. It's an absolute illogical result, both on the law and on the facts. If there are no other questions, then I'll see you the rest of my time. Is it possible to have one second? I just need to pull something out of my brief. Thank you. In looking at safety measures in this situation, I'd like to first point out a few things. Number one, there were other measures, and it goes back to our original argument of the reasonable accommodations that we did ask for. My client did ask for and had some discussions and there were some ongoing negotiations with the city. But one of the things that the city didn't offer or the city didn't give alternatives to that we actually did was about things like call boxes. We actually spoke to fire people and went through those things. The application of the law is really what's at stake here, Your Honor, and I would like to first talk about the fact that in the records we did put in, my client did testify under depositions as well as the other city officials that we talked about, the fact that sporadic inspections did cause a lot of stress. If we're dealing with people who have this disease as far as alcoholism is considered and things of that nature, a lot of these things do add to that stress. The other thing that we talk about is the fact that this affects them as well because of the added cost. The added cost to them, and a lot of these people are low income and have very little support, it adds to stress as to whether or not they're going to have a place to live. So there's a lot of things that we did try to put in the record to show that we did try to match them point for point in that respect. More importantly, when dealing with a reasonable accommodation, that reasonable accommodation has to show that the city is willing to work with the resident, with my client in this respect. And what we were able to show by the testimony of the city employees is that they did have agents of the city go and unfairly tag, unfairly issue fines, unfairly do things to my client in this situation. So there was no good faith on the part of the city in any point. And they had discussions of that in the opening or in the entering in of this reasonable accommodation. What's important to also realize is the fact that these people depend on that house. It's not a situation where they have other places to go. Putting in Spear and Clear systems in a situation is discriminatory because they basically are being told that they have to have sprinklers because they're not, quote, unquote, family. So the application of that for that reason alone shows that, again, the city is picking and choosing who they want, who they want to live with. And who they don't want as far as residents of that city.